May it please the Court, my name is Michael O'Donnell, Riker Danzig. I represent Dun & Bradstreet. I'd like to reserve four minutes for rebuttal. Keep your eye on the clock, we'll try to help. I will, Your Honor. Your Honor, this is Dun & Bradstreet's appeal of the District Court's denial of the anti-SLAPP motion, pursuant of the anti-SLAPP motion statute of 42.516, with regard to the right of publicity statute 3344. I would like to point out five points that make this case different, and I can do that in less than one minute's time, Your Honor. First, this is the first anti-SLAPP motion where the defendant has challenged the factual and legal sufficiency of plaintiff's claims. And in this case, plaintiff has not rebutted those affirmations of Carlos Palmer and of Ryan O'Neill. Well, I'm not sure what the implication of that is, because our jurisdiction, if we have it, is limited to the treatment of the anti-SLAPP motion. Are you suggesting we should consider a motion to dismiss on more traditional grounds, or a motion for summary judgment on factual grounds? Motion for summary judgment on the UCMB PC. I would cite Planned Parenthood, Senator, v. Medical Progress. I would cite Judge Smith's opinion in Herring, Network v. Mano. And I would cite Hilton v. Hallmark Cards. Well, explain to me how it is we have jurisdiction over a denied motion for summary judgment separate from the anti-SLAPP grounds. It was, you decide this anti-SLAPP motion on a summary judgment standard. You have to decide the... But that's purely the anti-SLAPP motion. Yes, Your Honor. Exactly. That's all I'm talking about is the appeal relates to the anti-SLAPP. That's it. Can I just, as an aside to what my colleague just mentioned, and of course in the Maddow case, it was a political issue. The statute, and I'm going to quote this, says that section 425.17 applies to promotions of, and I quote, dramatic, literary, musical, political, or artistic work. In what way is what Dun & Bradstreet provided in this teaser, tester, if you will, how does that fall into the language that I just quoted? It falls into, Your Honor, the language you quoted was the creation, dissemination, exhibition, or advertisement, or other similar promotion of any dramatic, library, musical, or artistic work. Then it says... Which one is this one? Including, but not limited to, a motion picture or an article published in a newspaper or magazine or general publication. So which is this? It's none of those. This is an expressive, transformative database, Your Honor. Stop. We just read off and you just repeated a list of things and which one of these does this category... Your Honor, the legislative history of the set forth in Major v. Silna expressly refers to the assembly record, which refers to a speech product. That's what the D&B database is. That's what Judge Chesney found, that it is a First Amendment protected... Oh, wait a minute. So are you saying that any speech is covered by the anti-SLAPP statute, regardless of its nature? No, Your Honor. I'm saying First Amendments, speech protected by the First Amendment, and that's what we have in this case. I guess what we're struggling with here, you know, the anti-SLAPP statute is a California procedural issue. We have our own problems with that in the federal court, but it's here. And my question to you is, I just read what it's supposed to cover, and my colleague just mentioned again, dramatic, literary, musical, political, or artistic work. Which of those is Dun & Bradstreet's tester? Well, it also goes on to say, including but not limited to a newspaper or general magazine. About those things. In other words, if there's a newspaper article about a political thing, sure. But which one of those categories does it use? Just because something is in an article that it's covered? No, I'm saying, what the database is, essentially it's the equivalent of a business newspaper. I understand, I've read it many times. But I just, I struggle with how that falls into the anti-SLAPP provision. The anti-SLAPP provision, for better or for worse, is designed to protect what, at least at the time, was supposed to be clearly well-known political rights, and literary rights, and so on. They wanted to cut it off at the past. This is a garden variety, business newspaper, a fine paper, branch, all of that. But I don't see how it fits into the anti-SLAPP statute. What am I missing? Well, business news is a public interest. But you've got two statutes here, or two subsections, and it is subsection 17 that creates this public interest exception. And you're telling us to define it in such a way as to basically parallel what subsection 16 provides in the anti-SLAPP provision, because it talks about speech. So you're telling us if it's covered by 16, it can't be covered by 17? I'm struggling to see what's left of subsection 17 based on your interpretation. Subsection D2, 425.17 D2, was expressly put in to ensure that the public interest exception in B, which refers to suits brought in the public interest and commercial speech, did not totally vitiate the right of a litigant to bring an anti-SLAPP motion when we're dealing with the situation where First Amendment speech is being chilled. And that is the point of D2. But the whole anti-SLAPP provision doesn't kick in unless there's a concern about free speech being chilled. And so I'm left by thinking that, well, the public interest exception is nullified completely by your interpretation of D2. It seems to me that D2 specifies a subset of free speech, dramatic, literary, musical, political, or artistic work. And you're telling us that it doesn't really fit in any of those categories. It goes on to say including, but not limited. Well, including means within this first group. Which of those first groups does your client's product fit within? It goes on to say including, but not limited to. Specifically, it says, including, but not limited to a motion picture. Is your client's product a motion picture? A motion picture. Is it a motion picture? No. Is it a television program? Or an article published in a newspaper or a magazine? It's not any of those. Which one do you think it is? It's a speech product, Your Honor. Yeah, but it's not one of — we just read off a list of things. Which one of those covers your client's product? I don't think any of them do. I think — You're trying to tell us that this needs to be read not by its words, but by anything that's a free speech product. But that nullifies the antislap exception to begin with, because it says if it's a free speech product, the public interest exception can't apply. Now, what's wrong with my view of this? Your Honor, because that — because the Hoover's database has articles in it. It has — the Hoover's database has — inside the Hoover's database, there is editorial commentary news, detailed global market reports, industry news. Is any of that covered by the plaintiff's complaint? Yes, Your Honor. And — Their complaint has very specific attacks on the listings contained in the Hoover's database, not other things that might be included in the database. Their complaint expressly seeks to prevent D&B from having a free trial of its database, Your Honor. It really is that simple. Well, yeah. And frankly, I've got to say I'm not particularly impressed by plaintiff's claim. But we're struggling here with the antislap provision. And I'm having trouble understanding how the exception carved out to the public interest exception fits your client's product. Because we've gone through this list three or four times, and I don't see any of those terms being identified by you as being — covering your client. It's not literary. It's not a TV program. It's not a motion picture. Tell me which one it is. If I can't do a free trial, which is what will happen in this case, because I can't pull out the names, Your Honor, I don't know — there's no personal information in Hoover's. I have no idea who the current or former residents of California are. Zero. I cannot show that Hoover's database. And that Hoover's database does include editorial commentary news, detailed global reports, strength, weakness, all of interest. And that will be chilled because I cannot show the Hoover's database. Sure you can. Just leave out the personal information. I — Your Honor, there is no way that we can redact out millions of names when we don't even know — Oh, come on. We don't — I'm having trouble taking — We don't even know where they live. You don't need to do that. All you do is limit the free trial to this additional material you're talking about, and plaintiffs don't have a claim. Well, if you limit that, then you don't understand how the database runs. And, Your Honor, by the way, we do not — there are no teasers, Your Honor. You see exactly what anyone is seeing. What's your best authority to show that the district court erred here in this failure to dismiss? The best authority would be Geiser v. Kuhn, Your Honor. In that particular case, it was a private foreclosure that somehow the court tied back to the Great Recession. You want to save your time? I want to save my time, but I want to just really quickly, Your Honor, get through my last four points, and I'll do it in one minute. This is the first decision where the district court has expressly held that Hoover's is a protected First Amendment product. The only way a user can pull up Odette Baddis' name is to ask for a free trial, and the only thing she finds is her name, job title, and business phone. There is no confidential personal information, defamatory information. And finally, my last point that I want to make sure I make is that Odette Baddis is a public employee. Under California statute, the public has the right to know her business address and her phone number. And this action is saying D&B can't even publish that. But, counsel, you're going to the merits of the case, not the anti-SLAPP issue, and that's what we're struggling with, the anti-SLAPP issue. I'm trying to portray the chilling effect. I will save the rest for my time. Very well. All right. Mr. Osborne. Good morning, Your Honors. May it please the Court. My name is Ben Osborne. I represent the plaintiff, Odette Baddis. Can you speak up a little bit, Mr. Osborne? You've got a lot of people out there in TV land that want to see you. Sure thing. Including my wife and dog. I hope they're watching. I represent the plaintiff, Ms. Baddis, in her lawsuit against Dun & Bradstreet. My name is Ben Osborne. May it please the Court. Ms. Baddis sued Dun & Bradstreet because Dun & Bradstreet uses her name and persona to advertise its disturbing and intrusive product without her consent. What's so disturbing and intrusive? Well, I want to be clear here that it is not simply a business newspaper. The Hoover's product is a tool, as alleged in the complaint, used by B2B salespeople to target the individuals in the database with phone calls to promote goods to them. And beyond just providing information about who they are and their contact information, the Hoover's database is a service that allows you to track that person's job changes and other events that Hoover's refers to as disturbing. Well, your lawsuit appears aimed at the teaser element. Correct. Yes. What you're describing as disturbing in this list that people can use to reach customer targets isn't coming from the free trial. People don't have broad access to the information to do that. The free trials let them see what kind of stuff is there. But they don't get to pull out their whole database of potential buyers of X product because they don't have access to it unless they buy it. And you're not complaining about them buying it. You're complaining about the teaser. So I see a real disconnect between what you're complaining about and have described as intrusive and what it is this is the subject of this lawsuit. Your Honor, the teaser profiles do two things. First, they give you enough information to know that the person you're searching for is in the database. And by you, I mean the B2B salesperson who might buy this product. They see that Odette Battis is there. They know she's someone they want to track. And then the teaser profile tells you you have to purchase a subscription to learn more about this person. There are triggers listed in that profile. Let me ask you this, counsel. From my perspective, you're just arguing the merits of your case. Why should the anti-SLAPP provision not apply in this case? Thank you, Your Honor. Yes, we are not here to discuss the merits. We are here to discuss the anti-SLAPP motion. Right. How did the district court get it right from your perspective? Well, I think we would start with Martinez v. ZoomInfo, an identical case that came before this court three months ago. But the district court didn't have that. Correct, yes. That's an intervening change in law, but it makes your job easy here today because the facts and law involved in that case are identical to those present here. And the Martinez court correctly ruled that an identical lawsuit brought by someone bringing a right of publicity complaint against ZoomInfo, which is a competitor product to D&B Hoovers, was a lawsuit in the public interest under Section 425.17. And essentially, Dun & Bradstreet has one argument to say that Martinez shouldn't apply here, and it's the one you all discussed with opposing counsel just a moment ago. They claim that there's, essentially, that Martinez was wrongly decided because there's an exception to the exception and that because the teaser profile about Ms. Battis is an artistic, literary, or dramatic work, Martinez was wrongly decided. Let me ask you this. As you may know, Martinez is a subject of some discussion in our court. Let's just say, arguendo, that Martinez disappeared. What's your best argument in this case that the district court got the anti-slap provision correct? If you want me to choose the best one, I would be forced to choose between two, I suppose. But the best would be, the single best, would be the reasoning that the district court used, which is that the anti-slap motion failed at the first prong, which is that Dun & Bradstreet had to show that the plaintiff's claim arose from speech in connection with an issue of public concern. And Dun & Bradstreet simply failed to demonstrate that Ms. Battis' profile, Ms. Battis is a small-town librarian in the city of Richmond, California, which includes a job description of her, the identities of her colleagues, her contact information, and the promise that you can track her Internet web browsing behavior if you buy the product. Dun & Bradstreet failed to show that any of those things are speech on an issue of public concern. And the case law is quite clear on this point, that a profile about a private individual that's simply factual information comes nowhere close to the standard for an issue of public concern. I point you to the Jams case, California appellate case. In that case, the ADR service Jams advertised its services by including a biographical profile about a retired judge on the website. Now, the court ruled in that case that the biographical profile about the judge was not speech on an issue of public concern and, in fact, fell within the exception for commercial speech. That's my second argument, by the way. That's the second argument on which I would say the anti-SLAPP statute doesn't apply. The commercial speech exception should apply here, even if I were to assume, arguendo, as you asked me to, that Martinez was wrongly decided and that the public issue defense doesn't. The commercial speech, I think, is even more squarely on the facts here. The commercial speech exception under Section 425.17 applies, essentially, to speech that is designed to promote a good or service. And, actually, I'll remove essentially because I'm quoting now from the statute. And speech that is made for the purpose of promoting that good or service for which the intended audience is an actual buyer or potential customer. Here, Dun & Bradstreet just told you that the only people who can see Ms. Battis's profile are people who call up and ask for a free trial. It's distributed only to prospective consumers of the product, and it's made only for the purpose of promoting the D&B Hoopers product. So, under JAMS and other case law that we cited in the briefing, I think the commercial speech exception would apply squarely here. As Judge Smith was talking about, if Martinez disappears, what kind of a case do you have here to rely upon? Oh, well, so I just cited my two strongest arguments. Would you like the case law that supports each of those arguments then? Sure. You're saying JAMS primarily, right? That's for the commercial speech. That's my second argument. Serova also supports our argument on that front. To go back to the decision that the district court itself made, which was on grounds that they failed to show speech in connection with an issue of public concern. Let me get you our best cases there. That was about the retired judge, right, that you cited? JAMS was about the retired judge. Serova was about a Michael Jackson album where the album cover claimed that Michael Jackson was the author of the tracks, and there was an ongoing public dispute about whether Michael Jackson was in fact the author, and the California court there, it might have been California Supreme, I can't remember if it was California Supreme or Appeals, but in any case, it ruled that because that statement about the authorship was made for the purpose of promoting the product, even though it weighed in on an issue of public controversy, it still qualified for the commercial speech exception, and that's just to illustrate how broad that commercial speech exception really is. Here, of course, no one's arguing Ms. Battis' profile weighs in on any issue of public discussion whatsoever. The cases I would cite in favor of the district court's ruling, which is that they failed to show an issue of public concern, would be Hilton, Rivero, Piping Rock, and Philmon. I would also cite Dun & Bradstreet v. Green Moss, which did not consider anti-SLAPP, but it did consider profiles of the exact type that are at issue here. Now, I can go into each of those cases. Piping Rock, Hilton, and Rivero really lay out the standards for what should be, or what is considered to be an issue of public concern. It has to be something, this is from Piping Rock, of concern to a substantial number of people. That case also says that a broad and amorphous public interest is not sufficient. And just pausing there, I'll get into the other standards, but let's talk about something of concern to a substantial number of people. Is Ms. Battis' name, job description, and contact information of concern to a substantial number of people? Dun & Bradstreet haven't shown that it is, and indeed, they've admitted that they only distribute the free teaser profile containing that information to a limited set of prospective purchasers who are B2B marketers. Then, the other factor I want to highlight here is a broad and amorphous public interest is not sufficient. Now, in their motion before the District Court, Dun & Bradstreet identified the following topic of public concern, business information. That's what they said. That's what the District Court was evaluating. They've tried on appeal to change the topic that they've identified, but the issue on review is what did they present to the District Court? They said the relevant topic was, quote, business information, and the District Court correctly applied Piping Rock to conclude that that was too broad and amorphous a topic to qualify. If something as generic as business interest qualified for anti-SLAPP protection, the meaning of the requirements of the statute would be rendered meaningless. So let's go on to Hilton. That's another case I said was relevant here. Hilton really describes three categories that could qualify as an issue of public concern, none of which apply here. First, statements concerning a person in the public eye. And here I want to pause on the point that opposing counsel made that Ms. Battis is a public employee. That's true. She's a government employee. She's a small-town librarian. However, the case law is unambiguous that that, the fact that someone is a public employee does not mean that statements about them are of widespread public interest. There are many public employees, including, for example, clerks of this court. There's a case that we cited in our briefing, the name of which escapes me at the moment, but it's about employees of the California State who... and the ruling was that statements about those individuals was not a statement of public concern simply because they were California State employees. Statements about the individual, but is the fact... That's Rivera. I already talked about Rivera. Is the fact that a person is a public employee holding whatever particular job, librarian in her case, is that non-public information? Sorry, I want to distinguish between non-public information and the requirements of the anti-SLAPP statute, right? It's a separate question whether the fact that someone is employed by the state government is a public piece of information. It may well be. The question that we're trying to answer right now is, is it statement... is it a statement about an issue of public concern, which is a defined term under the anti-SLAPP statute, and the case law says it has to be widespread, an issue of widespread public discussion. You're not answering my question. You're going to explain, I take it, why my question doesn't matter. Yes. So I should accept as a proposition, because you're not denying it, that the fact that she is a government employee is not itself non-public information. I don't know the answer to that question, but it seems to me it does speak to the question of what the public interest here might be. Your Honor, I would agree with the first part. I don't know whether her status as a public employee is publicly known. I would suspect that it is. But I don't know, and it's not relevant. But I don't think whether information is public is relevant to whether the statement or the speech being evaluated is a statement in the public interest within the meaning of the anti-SLAPP statute. Who decides that? Does the trier of fact, in this case a district judge, get to determine by herself, well, this is interesting, so we're going to let that fly, but the other is kind of boring, so we won't take notice of that? Is that what happens? Well, I think it is a judge-made determination, but that determination is informed, as all judge-made determinations are, by the statutory language and the case law. And here I've just been citing the case law that it gives color to the statutory language and makes clear that you need a specific, it can't be broad and amorphous, it needs to be of concern to a substantial number of people. And, lastly, in most cases, the statement will weigh in on some topic of controversy or some public discussion, right? There's no debate here that Dun & Bradstreet has identified in which Ms. Battis' contact information and job description were cited by someone trying to make an expressive point on a public debate. A long-time alderman in political power in Chicago was recently convicted, and some of the evidence talked about how many of his political operatives were on public payrolls. So the fact that they were on public payrolls became part of the trial, certainly a subject of public interest. I'm not saying every employee is going to fall in that status, but it gets a murkier area when, I mean, I don't know what this database discloses, but if the core of it is that your client is a librarian for whatever community, I can imagine circumstances where that might be a public interest. Possibly. Dun & Bradstreet didn't identify any such circumstances. Well, again, I don't know what's in the database. I'm not sure there's much that would be revealed there, but that's the merits question. I'm trying to figure out, is there something there that potentially, and they've made the argument that somehow knowing who works for the government is something the public can be interested in. It could be. I want to be precise that here we're talking just about the teaser profile that's used to advertise, not the broader database, but with respect to the... But you weren't so precise when you started off telling us how disturbing and intrusive this was. So, you know, we're trying to stick to the anti-SLAPP argument, but both sides are tiptoeing into the merits, as I have, because it's hard to figure out what's involved here and what the public interest impact might be. Yes, Your Honor, that's part of why we've also argued in our brief that anti-SLAPP appeals shouldn't be available on an interlocutory basis because anti-SLAPP inquiries necessarily implicate the merits, as Your Honors are getting into right now. For the time being, the three of us can't do anything about that. Understood. So, Your Honors, at this point, I think I will rest unless you have another question for me. Any other questions? I think not. Thank you, counsel. Thank you. Very well. All right, Mr. O'Donnell, you have some rebuttal time. Yes. Your Honor, with regard to D2 and what is the D&B database, I would submit to Your Honors that the D&B database is indeed a literary work. It's what we're saying no more than we're the Wall Street Journal, and no one would say the Wall Street Journal doesn't have the right to offer a free trial. Just like, as the amici point out in their brief, no one would say that a bookseller doesn't have the right to let his customers peruse through the books. Wait a minute. So you're saying your argument as to D2 is that what you have offered, in this case the teaser, is a literary work in the sense of the anti-SLAPP statute? First of all, there is not a teaser, Your Honor. You go through Mr. Palmer's certification factually. He rebuts every single claim in the complaint, including that there was a pleading that there was a teaser, including the Internet browsing. That doesn't occur. It's in the record at E91 through 96, his affidavit, his reply affidavit. You also have his affidavit, initial affidavit, I think in the ER 160s. Every single time he takes it through. What we're talking about is simply a free trial. There is no... All the more of a puzzle to me, because you seem to be saying that in the categories that we've cited from the statute, that the one you're hanging your head on is that this was a literary work. Well... I may not be an English professor, but I've read a lot of stuff, and I've never thought of a teaser in this type of being a, quote, literary work. I'm not. What I'm saying is you cannot look simply at Mrs. Battis' name and number. You have to look at the product itself. That's what the Geiser case... How big the font is? What are we talking about? The Hoover's database itself is what we're talking about. You have to look at that, Your Honor. And you have facts that... The old yellow pages were a directory. Yes. And then they also had a few pages of government information and why they have the tsunami zones and so forth. Right. If you had a database that got sold based on the directory but had other things, does that make the total product a literary work or something other than a directory? Well, even... What it does make is if you, for some reason, accept that these are teasers, it makes those teasers essentially ads that are inextricably intertwined with the database. Free trial. You described your free trial. What's in a free trial? What's in a... Is it access to a certain number of listings? Can they pick the listings? They can look at whatever they want in the database. The only restriction whatsoever is even paying customers need certain credits to look at certain elevated items. If you hit that, it just says need credits. It doesn't say how much. It doesn't say buy or anything else. Zero. It doesn't say... It's not like Zoom info where it says solicitation. There are no teasers. There's no browsing. All it is is a free trial of Hoover's, which is protected by the First Amendment. Your time is up. Let me ask my colleague, does either have additional questions? No. I think not. Thank you very much, Mr. O'Donnell and Mr. Osborne. The case just argued is submitted. Thank you, Your Honor.
judges: Siler, CLIFTON, SMITH